SIMON PERSKY, TRUSTEE, *vs.* GIUSEPPE PUGLISI ET ALS.

Third Judicial District, Bridgeport, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

There is but one method to correct the failure of a State Referee to make a finding with reference to claims actually made before him, viz., a motion to recommit his report; neither the Superior Court nor this court can consider claims which do not appear to have been urged at the trial.

It is not necessarily error for a court to rescind or vacate its judgment in whole or in part, and, therefore, an assignment of error is insufficient which merely complains of such action on the part of the trial court without specifying why the judgment, as amended, is erroneous.

A building contractor who has been wrongfully prevented by the owner from completing his contract, may recover the reasonable value of materials furnished and services rendered by him, even though the contract be indivisible.

In the present suit for foreclosure of the plaintiff's mortgage, the defendant N. Co., within two years of the perfection of its mechanic's lien, filed a cross-complaint for foreclosure thereof, claiming priority over the plaintiff's mortgage, and, after the expiration of the two-year period, obtained a favorable judgment which the plaintiff attacked on the ground that, while he had received

Persky *v.* Puglisi.

a copy of the cross-complaint, as required by Practice Book, § 213, p. 293, none had been delivered to the defendant P, owner of the equity, who was an indispensable party to the proceeding, and that, therefore, the N. Co. had lost its lien under § 5231 of the General Statutes by failing to commence a suit for foreclosure within two years of the date of its perfection. The trial court found that P had actual notice of the plaintiff's suit and granted judgment by default against him in that suit for failure to appear. *Held* that inasmuch as P was already before the court in the plaintiff's suit, service of the cross-complaint upon him was not a condition precedent to the commencement of the N. Co.'s suit, and that the failure to make such service affected P only (the judgment, of course, being ineffective against him) and afforded no ground for complaint to the plaintiff who, moreover, had cured any irregularities in service by answering the cross-complaint upon its merits.

The defendant B. Co. also filed a cross-complaint for the foreclosure of its mechanic's lien, but not until three years after the date when it was perfected. *Held* that the trial court properly ruled that, under § 5231, the lien of this defendant was no longer in force.

An implied condition that a waiver of mechanic's lien shall not take effect unless and until signed by all prior lienors, cannot be read into the waiver in the absence of language clearly requiring such construction.

Certain of the defendants waived their mechanic's liens "so far only" as to enable the owner to obtain from the plaintiff a "loan of seventy-five thousand dollars." The plaintiff loaned the owner $60,480 in cash and took a mortgage for $75,000, the difference representing a commission and bonus charged by the plaintiff. *Held* that the waiver was effective only up to the amount actually loaned by the plaintiff.

Argued October 31st, 1924—decided January 13th, 1925.

ACTION to foreclose a mortgage of real estate and for other equitable relief, brought to the Superior Court in New Haven County and referred to the *Hon. Donald T. Warner*, a State Referee, who heard the parties and filed his report; the court, *Webb, J.*, accepted the report as amended, found the facts as therein stated, and thereafter judgment was rendered (*Nickerson, J.*) for the plaintiff against certain of the defendants, and in favor of the New Haven Paint Shop, Inc., a defendant, upon its cross-complaint, from which the plaintiff, the Lamp-

son Lumber Company and the N. T. Bushnell Company, defendants, appealed. *No error on appeal of plaintiff and on that of the Bushnell Company; error in part on appeal of the Lampson Lumber Company.*

*Frank S. Bishop,* for the appellant (plaintiff).

*Charles F. Clarke,* for the appellant (defendant the N. T. Bushnell Company).

*John Elliott,* for the appellant (defendant the Lampson Lumber Company).

*Philip Pond* and *Benjamin F. Goldman,* for the appellee (defendant the New Haven Paint Shop, Inc.).

BEACH, J.   On October 21st, 1920, Joseph Puglisi, owner of the premises described in the complaint, mortgaged them to the plaintiff, as trustee, for $75,000, to secure eighty notes given by Puglisi, payable to bearer and aggregating that sum.   By agreement the plaintiff retained a commission of $2,520 and a bonus of $12,000. The mortgage was given to finance the construction of an apartment house, and about February 20th, 1921, Puglisi disappeared leaving the building unfinished and leaving unpaid a number of claims of contractors, with whom he had contracted directly for materials furnished and services rendered in the construction of the building.   On May 25th, 1921, this action to foreclose the mortgage was brought against Puglisi, who defaulted, and twenty other defendants, of whom only three mechanics' lienors are now before us.   The cause was referred to the *Hon. Donald T. Warner,* State Referee, who reported that there was due on the plaintiff's mortgage $84,697.14, and found the facts bearing on the validity of the three claims in controversy.   The Superior Court

accepted the referee's report and decreed foreclosure of the plaintiff's mortgage against all defendants except the New Haven Paint Shop, Inc.; from this judgment two defendants, the Lampson Lumber Company and the N. T. Bushnell Company, have appealed. The court also entered judgment of foreclosure in favor of the New Haven Paint Shop, Inc., upon its cross-complaint, against the plaintiff, and from this portion of the judgment the plaintiff appeals.

We take up first the plaintiff's appeal. The cross-complaint of the New Haven Paint Shop, Inc., hereinafter called the Paint Shop, is in the form commonly used in actions to foreclose mechanics' liens, except for the allegation that by scrivener's error in the office of the town clerk, the record of the certificate states that the lienor's services were commenced on May 26th, 1921, instead of on May 26th, 1920, as the fact is alleged to be. Plaintiff's reply denies that the work was commenced on May 26th, 1920, and that the record to the contrary was by scrivener's error, and also denies the priority of the Paint Shop lien over the plaintiff's mortgage. The referee found that the lienor commenced to render services on May 26th, 1920, that the record, which purported to show that the work was not commenced until after it was finished, was obviously erroneous and incapable of misleading any creditor, and that the Paint Shop lien was valid and prior in date to the plaintiff's mortgage.

As to the amount of the lien, the referee found that "the amount due as claimed in the lien was $6,806. . . . The company did not complete its contract, but quit before it was finished and, estimated, the cost of finishing was $1,600." On this finding the court fixed the amount secured by the lien at $5,206, with interest. Assignments of error one, two and three challenge the sufficiency of the referee's report to sup-

port the judgment in this particular. Number one is too general to be considered. Numbers two and three are to the effect that the court erred because the referee made no findings from which it could be inferred that the amount due the lienor was $5,206, with interest. The context of this part of the finding makes it clear that the referee was summing up, with the utmost brevity, the subsidiary facts found, and we think the court correctly understood the finding to say that the amount due on the lienor's contract was $6,806, as claimed in the lien, that the lienor did not complete its contract, and that the estimated cost of finishing the work according to contract was $1,600, leaving the net amount due $5,206, with interest.

Plaintiff also makes the claim, under number ten of his additional reasons of appeal, that the court erred in assuming, in the absence of any finding at all on the point, that the over-statement of the claim to the extent of $1,600 was an innocent mistake and not intended to deceive. It does not appear, however, that any claim was made before the referee, calling on him to make a finding as to whether the over-statement was innocent or with intent to deceive. If that claim was in fact made, and the issue of fact not determined by any finding of the referee, the plaintiff ought to have moved to recommit. In the absence of any such finding, we cannot say that the court erred in failing to invalidate the lien upon a claim which may never have been made while there was opportunity to answer it.

The fourth and fifth assignments of error mistakenly assume that the trial court erred in giving priority to the Paint Shop lien without any finding by the referee as to the date when the lienor commenced work. On the contrary, the referee specifically found: "Contract was made May 26th, 1920, and the company began work on said date."

The sixth assignment of error is that the court erred in "rescinding or vacating in part the judgment of the Superior Court given February 21, 1924." This is not a good assignment of error. It is not necessarily unlawful for a court to rescind or vacate its judgment in whole or in part. The change here complained of was in reducing the original adjudged amount of the mortgage debt, and no reason is given for assuming that the judgment as changed is not correct.

Reasons of appeal numbers eight and nine assume that the judgment upholding the Paint Shop lien is erroneous in the absence of a finding that the lienor's contract was divisible. In truth, the judgment is founded on the accepted principle that a building contractor who has been wrongfully deprived by the owner of opportunity to complete his contract, is entitled to recover the reasonable value of materials furnished and services rendered in the construction of the building, even though his contract is an indivisible one.

Reasons of appeal numbers eleven to fifteen, are based on the claim that no action to foreclose the Paint Shop lien was brought within two years after it was perfected, for the reason that no service of the lienor's cross-complaint was made on the absconded owner of the equity. The record shows that at the time the cross-complaint was filed, Puglisi had been brought into court by leaving an attested copy of the writ and complaint in the original action at his usual place of abode; that he made default of appearance, and that after the statutory continuance of thirty days and a finding of actual notice of the pendency of the action, judgment by default had been entered against him.

The cross-complaint was entitled as in the original action and so comprehended all the parties to it; but for some reason no service of copies of the cross-complaint was made or attempted to be made upon any other

party than the plaintiff. Plaintiff's claim is that be-
cause Puglisi was an indispensable party to any action
to foreclose the lien, the failure to serve him with a
copy of the cross-complaint was in legal effect a failure to
bring any action of foreclosure at all; and hence the lien
is now extinct because more than the statutory term of
two years (General Statutes, § 5231) has elapsed and no
action to foreclose the lien has been brought. This, we
think, involves a *non sequitur*, for the cross-complaint
was in fact filed within the two years, and did include
the owner of the equity as a party. While Puglisi was
entitled to be served with a copy of the cross-complaint,
notwithstanding his default, and could not be compelled
to defend himself without such service (Practice Book,
p. 293, §§ 212, 213), he was, nevertheless, at all times in
court and might at any time have waived service of the
paper and defended at will. As to him, the foreclosure
decree is ineffective, not because the suit was not com-
menced against him, nor because of a judgment on the
merits, but because of a defect of service. Whether,
under these circumstances, the Paint Shop lien is still
valid as against Puglisi, we need not now determine.
*Korb* v. *Bridgeport Gas Light Co.*, 91 Conn. 395, 402, 99
Atl. 1048. However that may be, no issuance and serv-
ice of new process was necessary as a condition pre-
cedent to the institution by cross-complaint of an action
to foreclose the Paint Shop lien, for all the parties were
already in court, and the immunity which each en-
joyed, under the rules, until served with a copy of the
cross-complaint, was a privilege personal to himself
alone.

Even if the failure to serve a copy of the cross-com-
plaint upon Puglisi had originally been available to the
plaintiff as a defense in bar to the maintenance of the
action, the defect was a curable one, and therefore
should have been pleaded in time to allow the Paint

Shop to obtain a proper order of service. This the plaintiff did not do, but answered the cross-complaint on its merits, denying, in effect, the validity and priority of the cross-complainant's lien. Having elected to defend on the merits, the plaintiff could not, under our practice, be permitted to wait until the curable defect had ripened into an incurable one, and then take advantage of it to vacate the judgment he had himself invoked. We find no error on the plaintiff's appeal.

The appeal of the N. T. Bushnell Company involves but one question. This Company's lien was perfected on March 11th, 1921. It answered the complaint by admitting that it claimed a mechanic's lien amounting to $2,022.45, by denying that its lien was subsequent to or had been postponed by waiver in favor of the plaintiff's mortgage, and denying knowledge or information concerning all the other allegations.

The referee found that the Bushnell Company's lien accrued before the plaintiff's mortgage and that there had been no waiver; and on these findings judgment was rendered for this defendant upon the issues raised by the plaintiff's complaint and the Bushnell Company's answer. Plaintiff has not appealed from this judgment in favor of the N. T. Bushnell Company.

On February 27th, 1924, after the referee's report had been accepted and judgment rendered fixing the amount of the plaintiff's mortgage debt, and nearly three years after the Bushnell Company had perfected its lien by filing a certificate, this defendant filed a cross-complaint claiming a foreclosure of its lien, and the plaintiff demurred on the principal ground that no suit to foreclose the lien had been commenced within two years, as required by § 5231 of the General Statutes, which provides that "no mechanic's lien shall continue in force for a longer period than two years after such lien has been perfected, unless the party claiming such

lien shall, within said period, commence an action to foreclose the same, and proceed therewith to final judgment."

The Superior Court sustained the demurrer on this ground and the lienor appeals. The lien is a creature of the statute, and the General Assembly, which created the right, may set a limit to the term of its existence. We are of opinion that this is what has been done and was intended by § 5231. Where the essential facts appear on the face of the complaint, such statutes may be invoked by demurrer. *Radezky* v. *Sargent & Co.*, 77 Conn. 110, 58 Atl. 709. The plain intent of this statute is to clear the title to the premises unless an action of foreclosure is brought within the time limited for the continuance of the lien. The phrase "no mechanic's lien shall continue in force," is conclusive. There is some equitable force in the claim that an action like this, in which a number of lienors are joined as defendants, should be treated as an omnibus suit for the settlement of the rights of all lienors. It is such in point of opportunity, but the statute does not permit us to extend the lien of one who has failed to seize his opportunity by filing a cross-complaint in due time. The lien of this defendant and the liens of others who failed to commence any action of foreclosure within the time limited by the statute, are no longer in force; as liens they have ceased to exist. Nevertheless, the former lienors are still unsecured creditors to the amount of their respective claims. We are not asked to determine the effect of this changed status upon the right to redeem accorded them by the decree. We find no error on the appeal of the N. T. Bushnell Company.

We now take up the Lampson Lumber Company's appeal. This company's lien accrued prior to the plaintiff's mortgage, but the referee has found, and the

court has adjudged, that this defendant waived its lien in favor of the plaintiff's mortgage by signing the waiver hereafter more particularly referred to.

This appeal raises four points. The first is based on an assignment made by Persky, as trustee of the Puglisi mortgage, to the Broadway Bank and Trust Company of New Haven, of all his right, title and interest in the mortgage and to the eighty notes described in the condition thereof. The assignment is in evidence, but the Broadway Bank is not a party plaintiff and has not been substituted as trustee under the mortgage, and by its terms Persky, as acting trustee, is still entitled to collect or enforce the notes by foreclosure. The decree of foreclosure requires that the defendants entitled to redeem shall pay the mortgage debt to the Broadway Bank, and this is objected to. Since this defendant's brief admits that it is immaterial to this defendant who holds the legal title to the premises, we see no reason why the error, if it be one, is harmful.

The second point is that the court erred in giving effect to a waiver of lien signed by this defendant and other lienors, on the ground that its language imports an implied condition that it should not take effect unless and until signed by all prior lienors, which was not done. No such condition is expressed in the waiver. The language relied on is this: "We, the undersigned, and each of us, . . . do hereby waive and relinquish, any and all liens or claims of lien, which we, or either of us, have or ought to have, . . . so far only as to enable the said Giuseppe Puglisi to obtain a loan of seventy-five thousand dollars from Simon Persky, trustee, and secure the payment thereof by a second mortgage upon said land and buildings, both of which mortgages in the priority herein given, we agree shall be prior to, and take precedence of, any lien, or claim of lien, which we have or ought to have." The subject

of implied conditions in waivers of mechanics' liens has been recently discussed in *Townsend* v. *Barlow*, 101 Conn. 86, 92, 124 Atl. 832, and *Hillhouse* v. *Duca*, 101 Conn. 92, 103, 125 Atl. 367, and it is enough to say, on the authority of those decisions, that the implied condition claimed cannot be read into the waiver by construction.

The third point raised by the Lampson Lumber Company's appeal is also based on the above quoted language of the waiver, and is well taken. The lienors waived their liens "so far only" as to enable Puglisi to obtain a "loan of seventy-five thousand dollars." In fact, as the referee finds, Persky, trustee, advanced to Puglisi but "$60,480 in cash, and the balance of said loan consisted of a commission of $2,520 and a bonus of $12,000 agreed upon and allowed to Persky for making said loan." We are of opinion that the waiver is on its face operative only to the extent of the loan which was in fact obtained. It cannot be supposed that the lienors were induced to postpone their liens merely for the purpose of having the premises further incumbered by a $75,000 mortgage. On the other hand, it was to their advantage that Puglisi should obtain a loan of $75,000 with a view to assisting him to complete the building and to carry out his contracts with the lienors, and the waiver submitted to them for signature held out the representation that their liens were to be postponed so far only as to enable him to obtain such a loan. This does not mean that their liens were to be postponed in favor of a twenty-five per cent commission and bonus on the amount actually loaned. As against the lienors who signed the waiver, the present amount of the mortgage debt should be revised by computing the original mortgage indebtedness at the sum of $60,480.

The fourth claim made by this appellant, that the

mortgage is wholly invalid because it does not truthfully describe the debt, is overruled. Nor is the mortgage invalid because the sums actually advanced were paid over before they were payable according to its terms.

The demurrer to the plaintiff's plea in abatement to the appeal of the Lampson Lumber Company, filed in this court, is sustained for the reasons stated therein.

There is no error on plaintiff's appeal and on the N. T. Bushnell Company's appeal.

There is error in part on the Lampson Lumber Company's appeal, and the cause is remanded with direction to modify the judgment of foreclosure by recalculating the present amount of the mortgage debt as directed in this opinion.

In this opinion the other judges concurred.